Alexander, J.
(dissenting). While I agree with the majority that electric generators qualify as consumer goods within the meaning of the price-gouging statute (General Business Law § 396-r), I cannot accept the sweep of its conclusion that the Attorney-General, in establishing that certain sales of generators during the disruption period were unconscionably exces *701 sive, has established prima facie that every challenged generator sale made by respondent during the disruption period that was above the predisruption price was unconscionably excessive, and hence that every consumer charged any amount above the predisruption price may be refunded the amount of the particular overcharge. I therefore respectfully dissent.
As noted by the majority, approximately 100 generators were sold during the disruption period. Of these, some 29 generators were sold at price increases of 10% or less; approximately 20 sales were at increases of 20% or less; some 29 sales involved increases of 30% or less; while about 19 generators were sold at increases of 50% or less. Only five sales involved increases above 50%.
General Business Law § 396-r (2) provides in pertinent part that "[d]uring any abnormal disruption of the market for consumer goods and services * * * resulting from stress of weather * * * no merchant shall sell or offer to sell any such consumer goods or services for an amount which represents an unconscionably excessive price”. Respondent does not dispute that it raised the price of many of its generators from the predisruption price during the period in question, but argues that its prices cannot all be said to be unconscionably excessive.* The majority concludes, however, that once the Attorney-General has made out a prima facie case with respect to one such sale, all sales of generators during the disruption period — sold at an amount above the predisruption price — constitute price gouging within the meaning of the statute. Indeed, in the view of the majority, because "the sales occurred over a relatively short period of time and were associated with a single market disruption, the presumption that the excess was unconscionably obtained * * * extends as well to the sales marked by lesser increases.” (Majority opn, at 699.) I believe this conclusion misreads the statute and impermissibly dilutes the Attorney-General’s burden in such a proceeding (General Business Law § 396-r [4]).
Section 396-r does not proscribe a pattern of conduct of price gouging, nor does it authorize that evidence of one *702 unconscionable transaction may supply the basis for a finding that all transactions within a given period were unconscionable. The statute explicitly defines what constitutes prima facie evidence of an unconscionably excessive price — which is what a merchant is prohibited from charging: "Whether a price is unconscionably excessive is a question of law for the court. Evidence that (a) the amount charged represents a gross disparity between the price of the goods or services which were the subject of the transaction and their value measured by the price at which such consumer goods or services were sold or offered for sale by the merchant in the usual course of business immediately prior to the onset of the abnormal disruption of the market or (b) the amount charged grossly exceeded the price at which the same or similar goods or services were readily obtainable by other consumers in the trade area, and, in addition, that (c) the amount charged by the merchant was not attributable to additional costs imposed by its suppliers, shall constitute prima facie proof of a violation of this section” (General Business Law § 396-r [3] [emphasis added]). The statute thus imposes upon the Attorney-General the burden of establishing, as a matter of law, the unconscionability of a particular price with respect to a single transaction. To permit the Attorney-General to use prima facie evidence of price gouging on one occasion as evidence of price gouging with respect to all transactions occurring during the disruption period, is to impermissibly dilute the burden that the statute imposes upon the Attorney-General. Extended to its logical extreme, the majority’s holding allows the Attorney-General to establish — on the strength of one generator sold at an unconscionably excessive price — that respondent had engaged in price gouging during the course of several weeks with respect to each generator sold above the predisruption price no matter how insignificant the increase despite the statutory requirement that the increase result in a "gross disparity”. The statute clearly does not permit such a result; rather it mandates that the Attorney-General establish prima facie evidence on a transaction-by-transaction basis that the statute was violated by a given sale at an "unconscionably excessive price”. Any other interpretation impermissibly places the burden on respondent to justify any and all increases in prices notwithstanding that such prices have never been assessed individually and determined to be unconscionable in violation of the statute.
As the majority concedes, not "all price increases are pro *703 hibited during periods of abnormal market disruptions.” (Majority opn, at 700.) Only "unconscionably excessive prices” are prohibited, and the statute prescribes precisely what evidence constitutes an "unconscionably excessive price”. Those factors identified by the majority as ordinarily taken into account in determining the unconscionability of a contract such as inequality of bargaining power, the use of deceptive sales techniques or confusing language in a written agreement (see, State of New York v Wolowitz, 96 AD2d 47) — are not relevant under the statute. Thus, the majority’s premise that unconscionability has both procedural and substantive qualities in the context of the UCC and common-law contract actions is inapposite here. The statute neither requires that such factors be established nor recognizes their relevance to the definition of an unconscionably excessive price. Neither does the statute, in defining what is unconscionably excessive and therefore prohibited, address such factors as the time span over which the sales occurred, and whether they are associated with a single market disruption. Indeed, the Legislature has already struck the balance in favor of the consumer by eliminating the necessity of demonstrating unequal bargaining power, or deceptive sales tactics. So long as there is a "gross disparity” in price and the increase is not attributable to supplier costs, the Attorney-General has made out a prima facie case.
The majority’s conclusion in this respect leads it inexorably to the conclusion that any consumer who purchased a generator above the predisruption price during the period in question may be refunded any amount paid above the predisruption price. In my view, this is an unwarranted expansion of the relief authorized by the statute. Section 396-r (4) authorizes the Attorney-General to apply for an order of restitution only for "aggrieved consumers”. Just as the statute does not permit a finding of unconscionability with respect to a series of transactions based upon evidence relating only to one transaction, it does not authorize sweeping restitution to all consumers who purchased above a predisruption price — whatever the amount of that overcharge might have been. The statute authorizes restitution only to "aggrieved consumers”, i.e., those consumers who were charged an unconscionably excessive price. Especially is this so where as here, the Legislature has provided for the assessment of civil penalties "not to exceed five thousand dollars”, the imposition of which are ordinarily commensurate with the severity and number of violations (see, General Business Law § 396-r [4]).
*704 Because Supreme Court impermissibly failed to assess the evidence presented by the Attorney-General in his petition and supporting papers on a transaction-by-transaction basis, I would reverse the order of the Appellate Division and remit the matter to Supreme Court for the appropriate assessment.
Judges Simons, Kaye, Titone and Bellacosa concur with Chief Judge Wachtler; Judge Alexander dissents and votes to reverse in a separate opinion in which Judge Hancock, Jr., concurs.
Order affirmed, with costs.

 I agree with the majority’s conclusion that a merchant may avoid liability under the statute by establishing that increased costs — attributable to sources other than increased supplier costs — caused the increase in the price to the consumer. Neither do I have any dispute with the majority’s conclusion that on these papers, respondent has not raised issues of fact with respect to increased nonsupplier costs such as would warrant a hearing.